I now call the second case for argument, Electronic Communication Technologies v. ShoppersChoice, Case 2019-2087. Mr. Friedland, whenever you're ready. Thank you. Good morning, and may it please the Court. David Friedland, on behalf of Appellant, ShoppersChoice.com. Through this appeal, Appellant submits that the District Court abused its discretion by not properly considering the totality of the circumstances and denying- Mr. Friedland, this is Judge Wallach. The District Court relied on 15 U.S.C. 1117 in its denial of attorney's fees instead of 35 U.S.C. 285. And the District Court also cited Tobinick v. Novella, which is an 11th Circuit case adopting Federal Circuit case law involving Section 285 fees, and held that the precedent also applies to 1117. Does this 285 precedent render your incorrect standard claim harmless? No, Your Honor, because by considering 11th Circuit case law and the Lanham Act adoption of octane fitness, the District Court did not consider applicable Federal Circuit case law decided after octane, such as Rothschild connected devices, which permits the Court to look at factors such as ECT's pattern of pervasive litigation in determining an exceptional case. That is a situation that does not come up in the Lanham Act, because you can't have a non-practicing entity under the Lanham Act where trademarks would be abandoned. So in this particular situation, because the Court looked to the Lanham Act and cases decided under the Lanham Act, and the Tobinick v. Novella case is the 11th Circuit case adopting octane fitness for Lanham Act cases, the analysis by the District Court did not include Federal Circuit cases that would contribute to an exceptionality finding in a patent case as opposed to a trademark case. If we were to agree with you that the incorrect statute was applied, do we need to reach an abuse of discretion analysis beyond that? Well, the abuse of discretion analysis in this case looks at the inquiry that the District Court made into the octane fitness factors, the totality of the circumstances, the deterrent effect of exceptionality findings, none of which are present in the District Court's order or in the order denying reconsideration. But if we say that by applying 1117 that the District Court simply erred, do we need to go further? No, you do not need to go further because the District Court would then need to make the proper analysis under Title 35 instead of the Lanham Act. Let me just insert myself in this discussion because I guess the question is whether or not it was error or if it was harmless error. And if you look at the District Court's discussion, he clearly was talking about the standard in octane. Even when he cited Tobinick, the 11th Circuit case where he's in the 11th Circuit, he talked about the standard in octane fitness. So I don't know why the error was committed or what it means, but it certainly does not suggest to me, at least in his discussion, that he was deviating or recognized anything beyond the octane fitness standard. And to your point on subsequent Federal Circuit cases, I understand that. I appreciate it. But no, we've not required a District Court judge under an abuse of discretion standard to necessarily cite Rothschild or subsequent Federal Circuit cases. And even if you were right about those issues, I don't see how those have anything to do with the Lanham Act. They have to do with the fact that the judge maybe didn't do enough here in terms of discussing the other challenges he made. Correct, Your Honor. And that's why in our briefing and in this appeal, our position is that the totality of the circumstances analysis undertaken by the District Court under Section 285, notwithstanding his application of the Lanham Act, was still inadequate. He did not address a number of the factors that were presented to him. He ignored the true grit decision that came out a week before his decision that was presented to him. Okay, I'm sorry to interrupt. Time is limited. And I take your point. We've all read the briefs. You never ask in your briefs, as I can tell, for a remand. You're seeking exclusively reversal. Now, it seems to me, even if we were to include an abuse of discretion, that your arguments have some heft. That goes to whether or not the District Court should have at least done an analysis of the other factors and those other cases. So, I'm a little troubled by your only asking for a reversal, whereas I think your arguments at best might support a remand. Well, our position, Your Honor, is that when you look at the totality of the circumstances and you look at all the factors that have been brought to the Court's attention in our briefing... But you're asking us to make a fact-finding with respect to those factors on our own, as opposed to arguing that the District Court should have at least discussed and analyzed that. But it seems to me that what you're asking us to do, on an abuse of discretion, is to take what the District Court said nothing about, to analyze those matters, and to come to our own conclusion. And that seems a bit aggressive, asking too much for the appellate court to do. Doesn't it? If the factors in front of you do not give you a basis to find this as an exceptional case, then the District Court should be instructed to reanalyze the exceptionality on a remand, at which time it can consider both the exceptionality issue and the amount of fees requested, which has not been addressed because of the denial. I appreciate that. That's what I'm saying. But the question is, did you ever ask for that? I looked at the back of blue. Now I'm looking at gray. In blue, you asked exclusively for a reversal. In gray, you repeat that. You're seeking just a reversal, but not for a remand in which the District Court judge would be required or compelled to analyze those other matters that you've raised here. Well, if this court is not going to make a finding on exceptionality, then the alternative should be a remand with instructions to the District Court to consider the totality of the circumstances. Do you think we're required to seek a remand, to ask for a remand, in order to get a remand? I would argue that implicit in our request for a reversal is a request that if you don't want to make the decision, you give it back to the District Court to do so. The District Court did not consider the totality of the circumstances. Which circumstances didn't it consider? It didn't consider ECT and shipping and transit's litigation history with hundreds of cases filed in the same manner. It did not consider the TruGrit case, which was decided a week before on the same patent claim, where the District Court in the Central District of California found that this was an exceptional case based on the filing history, the nuisance licensing letters. None of these were considered. The District Court did not consider the covenant not to sue that was brought to its attention, where our client shipped via FedEx and FedEx received a covenant not to sue for itself and its customers. Of course, we don't know whether the District Court considered that or not. The District Court said we relied on the totality of circumstances. Normally, we have a lot of case law that says that you don't have to say something about everything. In a number of our opinions, we say we considered the other arguments and we just summarily dismissed them. So why is that in and of itself? The District Court tells us they applied the totality of circumstances. Why isn't that sufficient for us to assume that the District Court did consider them, not, as in your view, which is that they didn't consider them at all? First of all, the District Court doesn't even identify those circumstances, let alone discuss its consideration of them. The only circumstances the District Court discussed were the lack of binding cases on point for the specific technology that was invalidated under Section 101 and the litigation conduct. There is no mention whatsoever of the deterrence factor that is present in Octane Fitness. There is no mention of TrueGrit, which is the same case decided by a different court a week apart. So we are only left to guess what the District Court may have considered, and in prior decisions of this court, such as Newegg, this has been pointed out as a basis for finding that the inquiry by the District Court was inadequate and therefore an abuse of discretion. This is Judge Wallach. Remind me, was TrueGrit raised to the court by letter or otherwise? TrueGrit was entered on May 23rd of last year. On May 28th, after briefing was completed, we filed a Notice of Supplemental Authority with the court with a copy of TrueGrit attached. And then on May 31st, the court entered its order denying the fees motion. Where is the Notice of Supplemental Authority in the record? I believe it's docket entry 97, but I would have to... That's okay. Thank you. You're welcome. It was also raised in our motion for reconsideration, which was filed a business day or two after the denial of the Section 285 motion with a request that the court consider TrueGrit in its analysis on reconsideration. But you never argued, did you, that TrueGrit was in some way collateral estoppel in respect to the issue before the court here? Please answer the question. Did you argue... Did you argue that TrueGrit created collateral estoppel binding on the District Court here? No, because it is not collateral estoppel. It's a different District Court. We argued that it was the same patent holder as the party asserting infringement. The same analysis that we had undertaken in our 285 motion, but simply a different result. I may... In TrueGrit, I know there was some discussion of the fact just based on the merits of the case that no reasonable patentee could assert the 261 patent claims against an alleged infringer. But did you also... Didn't TrueGrit also have other litigation problems or misconduct that the District Court also relied on in that case? There was a factual difference, which we noted in a footnote in a brief, I believe footnote 7, where there was a discussion of whether, because TrueGrit did not ship products, but rather provided software, how the anti-phishing claim of ECT in that patent could apply to a non-product, and that was an issue the District Court in TrueGrit brought up. And then we also brought up the distinction in our case where we have the covenant not to sue. That was not present in TrueGrit, but yet another factor that strengthened our Section 285 position. And also, if I may, because it was asked, the TrueGrit decision is at Appendix 155. It begins there in the appendix, and I believe my time is up. Any other questions? All right, we'll reserve the remainder of the time for rebuttal. Let's hear from the other side. May it please the Court, this is Artish O'Hanion representing Electronic Communication Technology. I would begin by saying I think the Court is correct to identify a number of things. This is Judge Wallach. In the red brief at 2425, you contend that the District Court did consider the TrueGrit decision in its attorneys' fees decision because it has some boilerplate language. Where on that page, you referenced Appendix 1626, where on that page is TrueGrit mentioned? Well, TrueGrit is not mentioned explicitly. Oh, then you just answered my question. There you go. Turning to the red brief at 28, you say that, I'm quoting you, ECT admits that the District Court used the word Lanham, but that the District Court applied the right law. In addition to using the word Lanham, did the District Court also cite and quote 15 U.S.C. Section 1117? Yes. And that's part of the Lanham Act, right? Of course. Does 1117 apply to patent infringement cases? It does not. But I do want to reiterate that they applied the correct standard. But you agree they used the wrong statute. Perhaps there was a typographical error in the order, but they considered... Counsel, counsel, don't speak when the court is speaking. No, I'm sorry. I'm sorry. Okay. You agree, you say it was a typographical error when the District Court both used the word Lanham Act and used the correct statutory number for the Lanham Act. Do you think that was a typo? We do, Your Honor. I think it's harmless error at the worst because the standard is exactly the same that they applied to this case. Tell me how you think it was a typographical error. Well, I think perhaps a clerk pulled up a case and they wrote an order and perhaps it was a mistake. But it's a mistake that doesn't make any difference to the analysis applied by the court in this case applied to the totality of the circumstances in this matter. Go ahead. Go ahead. Go ahead. Yes? Yes, can you hear me? Go ahead. Keep going. Okay. I don't find that there's any error in the judge's analysis on either the standard for applying Section 285 in this matter... We have a situation here in which the other District Court in the True Grit case made a finding that no reasonable patentee would have brought the suit there. That's not the entire basis for the decision, but that there is a finding to that effect, which arguably is collateral estoppel, though that's not argued here. But given that direct inconsistency, don't you think that maybe the District Court here should have said something about why it reached a different conclusion than the True Grit District Court did? Well, Your Honor, I cannot ask the court in hindsight to say whether they showed their work in a way that is perfect. But I would like to take a few minutes to turn to the True Grit case and demonstrate the flaws in the analysis in that case that demonstrate the proper administration of the standard by Judge Marra in this case. But isn't that a problem in and of itself? We are here as an appellate court under an abuse of discretion standard, and you're wanting to make an argument to us and wanting us to review and opine on a question where we don't have anything below about what the District Court thought about these arguments. So you think this is the way the system is supposed to work here? Well, Your Honor, to some extent I do. Because if we were to take every nuance underneath an order that every District Court has to make, then I think we would be bogged down quite a bit. But this is not a nuance. It's a directly inconsistent finding in True Grit that no reasonable patentee would have brought this case. It's directly inconsistent with what the District Court said here. Right? Yes. Well, yes, but there's two things that we need to look at. Number one, the True Grit finding is based on cases in another jurisdiction with another case doing analogous findings on patents that are different from this case. Well, wait, I don't understand that. Both cases involve Claim 11, right? Yes. And so the statement that no reasonable patentee would have brought the case covers the same claim that's at issue here. Well, we understand that, but there's no Rule 101 finding in the True Grit case. In True Grit, this is dicta in the Judge Standis' order here. Dicta? I don't understand that. There's no finding with respect to 101 in this case out of the Central District of California. In fact, this case is very, very different for a number of reasons. Okay. Wait, didn't the District Court in True Grit talk about how no reasonable plaintiff would have brought this under 101? Am I thinking of a different case? No. Didn't the court talk about that? No, absolutely they did, but they relied on cases that are relying on other patents in other maps. But they were talking about the same claim as Judge Dykes pointed out, right? I don't understand what you're saying. They relied on other cases? Let me point out, I think on page 3, appendix 1608, although this court has not reviewed the complaints and dockets of each of these cases, it is the court's understanding that all the related cases concerning patents issued from the same original specification at issue here. And then it says, True Grit asserts the patenting claim which EQT accused True Grit of infringing for purposes of Section 101 analysis because all the claims were based on the same specification. This is a continuation. It's axiomatic that the claims are going to be different, and the specification is not the analysis that needs to be used. If it's the same specification, it doesn't mean it's the same patent. I don't understand what you're saying. It's the same claim that's involved in both cases. But it's not the same claim, Your Honor. That's not true. Each case involved Claim 11, right? Oh, it's the same claim being brought by, yes, yes, by EQT. But the methods for analysis are very, very different. And Section 101 is not presented in this case, True Grit. Whereas Judge Mora had this case for nearly three years, had a 101 hearing, looked at the parties' behavior in this case. And I'd like to turn the attention to… I don't think it supports your argument. Excuse me. Yes, Judge Brown. I don't think it supports your argument that Judge Mora had the case for three years. That suggests that it wasn't a slam-dunk 101 case, but that it may have been more fulsome and difficult, even if he was eventually correct in his 101 analysis, right? I don't see how having it three years helps you. It took him three years to resolve this case. Well, I think he's the judge in this matter who can provide whether there's an exceptionality in this case. How long did he have for the attorney's fees motion? I can't answer that in days, but months, I believe. And I'm sure Mr. Friedland will respond to that. Let me ask… This is Judge Wallach. Let me ask, reading from True Grit, okay, tell me how it differs from the facts in this case. I'm reading… Now I'm quoting. The listed inventor and prosecuting attorney of the 261 patent is Scott A. Horsmeyer. According to the Florida Secretary of State, Peter Cerani is the manager of ECT. While ECT is the assignee of the patent, the original applicant was its predecessor entity, Eclipse. Between 2011 and 2015, Eclipse filed complaints against more than 150 defendants, alleging infringement of the claims from patents in the family to which the patent suit belongs before Eclipse changed its name to ECT. In 2017 and 2018, three declaratory judgment plaintiffs, in addition to True Grit, brought suit against ECT. The complaints in those actions attached generic nuisance value demand letters relating to the 261 patent that are similar to the demand letters sent by ECT to True Grit. Is that all the same in this case? Well, I don't know that that's all the same, and to be perfectly honest… Oh, wait, wait, wait, wait, wait. Counsel, how does it differ? Is the generic letter different? I'm sure the generic letter is very similar. I'm sure it's different to some extent. But that does not mean that it is a nuisance value lawsuit. You know, and I think we take a little bit of exception with that characterization. Really? Yes. On what basis? Because True Grit sued ECT. ECT did not sue True Grit. My understanding was there was a settlement offer for a walk-away, and True Grit said, no, we want our attorney's fees. Is that right? Yes, in the California case. Anything else, Counsel? No, I think, thank you for the time. Okay. Let's turn back to rebuttal. Counsel? Thank you, Your Honor. If I may address a couple of issues that just came up in my opposing counsel's argument. With respect to the typographical error of the Lanham Act, the Lanham Act and 15 U.S.C. section 1117… You need to get closer to the microphone. I'm sorry. Is that better? Yes. I'm sorry. The Lanham Act, specifically by name, and 15 U.S.C. 1117 by statute are mentioned four times in one paragraph in the two-and-a-half page order. We're aware of that. Okay. With respect to this case and True Grit, there's no question that we're talking about the same patent, the same claim, Claim 11, and the litigation practices of ECT that were addressed by the District Court in the Central District of California and were not written about by the District Court in this case, either in the order denying the 285 motion or the request for reconsideration. You can continue. Finish your thought. Both of which made available to the court the True Grit decision and the conclusion that was reached in True Grit that no reasonable patent litigant would have brought this lawsuit in view of the vulnerability of Claim 11 of the 261 patent at the time that ECT was asserting it. Since I'm out of time, I will say thank you. Judges, anything else? No, nothing. Okay. Thank you. We thank both sides and the case is submitted.